Good morning. May it please the court, my name is Rebecca Pennell representing Mr. George. We've outlined four issues in the briefing. First, whether Congress has the authority to outlaw failure to register based solely on a federal conviction. Second, whether SORNA was intended to be enforced prior to its implementation. Third, if it was intended to be enforced prior to implementation, whether it's constitutional. And fourth, whether the prosecution of Mr. George violates the ex post facto clause. I'd like to focus on the first two issues that I mentioned. The third falls in with the second as the alternative reasoning. Going to the authority to outlaw failure to register based solely on a federal conviction, the government still has yet to identify where in the Constitution Congress is authorized to. Just so that I understand the context, prior to the enactment of SORNA, did Mr. George have a duty under federal law to register as a sex offender when he moved to the state of Washington? And how did the enactment of SORNA change that duty or responsibility? When he came to Washington, it appears that SORNA had already been enacted. Yeah, but did he have a separate and a part duty? He was convicted previously. And it seems like he had a duty to register when he came to Washington, regardless if SORNA had ever been. Under Washington law, he had a duty to register. He was alleged to have violated a supervised release by failing to register. He admitted that he did. He was punished for that. The Jacob Wetterling Act, which provides a misdemeanor for a first-time offense, would indicate there was a duty to register. But how did SORNA change his duty to register? Well, if it was implemented, then it would, as the Sentencing Commission says, apply. And once it applies, there's enhanced duties. The definition of a sex offender is broader. There is further in-person registration requirements. There's requirements with respect to giving your license plate information, things that the state of Washington does not necessarily require. And Your Honor's question is interesting. Again, that goes to the second issue of 16193, and is it constitutional or can it only be read as enforceable after implementation? The government, when this case was initially prosecuted, said, look, the duty under SORNA is just to register under state law. That's a preexisting duty. It's not an unduly burdensome obligation. Since that time, we had a case in which an individual, we successfully convinced the government, was not required to register under Washington state law. They didn't meet the state definition of a sex offender. They met the federal definition under SORNA but not the state definition. The government has taken the position, well, that person still is required to register under SORNA, even though they're not required to register under Washington law where they reside. And so even though Washington hasn't implemented SORNA yet, with this expanded definition and expanded requirements, somehow an individual is obliged to force themselves on the state and force the state to take their registration materials, even though the state has opted not to because it's too expensive, too burdensome to do so. That interpretation of SORNA just doesn't make sense. It makes a lot more sense to understand SORNA in the Title 42, Chapter 151 provisions as a spending provision, all of it as a spending provision. And even though there are some individual duties on sex offenders, those are individual duties that the state has to require as part of its SORNA registration scheme. And the government in its brief even recognizes that point. When we argued in our briefing that, look, there are more individual duties in Chapter 151 than simply the duty to register. A person has to go in person with certain frequency. It has to register for a certain number of years. The government on page 22 of its brief says, well, those duties have to be read in light of Section 16912, which of course is immediately preceding 16913, which says that a state has an obligation to create a registry that conforms with this chapter. Right after that section, right after the section that says states have a duty to do this, Congress starts to outline what the registration scheme is supposed to look like. Under the registration scheme, there are certain things that sex offenders have to do. There are certain things that states have to do. And they didn't divide things up in terms of a state has to have registration requirements for everyone who is a sex offender under federal law. Instead, it says in the section right after 16912, all sex offenders as defined in this provision have to register, have to register within three days of any change of address. They have to initially register. An interesting point in subsection D of 16913, it talks about initial registration. And that section has caused a lot of problems in the courts of appeals with what does Section 16913D mean. And many of the courts that have addressed this have said it's ambiguous. I don't think it's ambiguous at all. If one understands the duty to register as being a special duty under SORNA to register, which is what I interpret it as, it's a very specific duty. You have to sign a piece of paper saying that you've been advised of your SORNA rights. That's in the provisions 16916, excuse me, 16917, says that there has to be a person that has to sign a piece of paper acknowledging their duties under SORNA. Then every person who can't register specifically under SORNA initially prior to their release from prison or within three days of receiving a sentence of probation, every person with a preexisting conviction has to initially register under SORNA. And subsection 16913D recognizes that. It is not at all confusing. But what I find especially interesting about 16913D, it says that for those offenders that predate SORNA, the attorney general needs to explain what that initial registration process is supposed to look like. And it treats the same individuals who are convicted prior to enactment, which is July 7, 2006, or implementation. Congress itself treated those two terms the same. What that means is with respect to an offender, implementation is the same as enactment. Until the statute is implemented, it's simply not enforced yet. That doesn't mean that the statute itself isn't enforceable upon enactment. Once the state has implemented SORNA, the duty arises. And there will be the DOJ has deputized this smart office to recognize jurisdictions that have implemented SORNA. Once that happens, there is a duty to register under SORNA as a sentencing commission when it interpreted this provision prior to knowing that DOJ would try to prosecute people prior to implementation, looking at it as a clean document. The sentencing commission, which has several judges on it, and even an ex officio from the DOJ said that there are going to be jurisdictions where SORNA applies, jurisdictions where SORNA doesn't apply because it's not going to be implemented anywhere, and if it doesn't apply yet, you simply can't require someone to register under SORNA. And if you read SORNA as just a spending provision, not in effect until implementation, then the serious problems with 16913 and this duty to register go away. There isn't an immediate duty to register that's not founded in the Constitution. Instead, the duty is something that states have to impose as part of their implementation. And then once implemented, if there is a violation of that and a jurisdictional nexus such as travel, then the person can be prosecuted in federal court. But until that happens, it's not enforceable. Because 16913, if you say it's immediately enforceable now, it's a blanket provision. And I know the Eighth Circuit has said otherwise in Howell. The Eighth Circuit didn't look at what Congress said the purpose of SORNA was, which is to create a uniform standard for all the states to enforce. Instead, they said, well, the purpose of SORNA is to regulate the interstate movement of sex offenders. That's just not the stated purpose. That's not what SORNA does. Sex offenders can move. Now, the government breaks down their argument into saying that there's a duty on the individual and then there's something for the states. It says that and then it doesn't say that. As I said on page 22, when I pointed out, 2250 says register under SORNA, and there's more in SORNA than 16913. There's things that an individual has to do with certain frequencies that you can't do unless the state has the program in place. The government on page 22 says, well, those individual duties you have to read in context with 16912. And when you read 16912, which says states have an obligation to create these registries along with 16916 and 16915, it's clear that those are just definitional. If it's clear that it's definitional with respect to duties on sex offenders in 16915 and 16914, why not 16913 as well? It's all part of the definition of what this spending provision, this registry that states need to create in order to be uniform, needs to look like. Your constitutional arguments are that it's vague and unclear. And then also that Congress doesn't have the power to do it. The constitutional argument, exactly. Well, I'm wondering, though, under it doesn't seem that unclear to me, but also, too, why wouldn't Congress have the power, you know, under the Necessary and Proper Clause? To enact 16913 as immediately enforceable? If it's a spending provision, there's no problem. To just say to all sex offenders, you have an immediate duty to register under the Necessary and Proper Clause, Necessary and Proper Clause doesn't exist by itself. It is Necessary and Proper Clause helps effectuate other identified powers of Congress. In Gonzalez v. Reich, the Supreme Court identified the Necessary and Proper Clause as basically compromising the third Lopez Commerce Clause power, the most broad Lopez Commerce Clause power. So in order to justify 16913 under the Necessary and Proper Clause, you have to tie it to another provision. It is not a Commerce Clause power to require all local sex offenders to register. Sex offenders are not commodities. This is not like a general regulation of a commodity such as wheat. Well, it seems that the purpose is clearly to track the movement of sex offenders through interstate commerce. The purpose of SORNA is to encourage states to create registries. That's what Congress said. I know the Eighth Circuit held differently by ignoring the clear purpose. The very first wording of SORNA says the purpose is to create the same standards. The purpose is not to track the movement of sex offenders. That's one enforcement provision. That's not the overall purpose. That is also not a legitimate Commerce Clause purpose, even if it were, because it's not an economic purpose. But also that's not what SORNA does. Sex offenders can move across state lines. It's only when you change residences, be it within the state or across state lines or have employment that you register. But you want to know where they are. That's the... Right. And that's a local activity. It's not an interstate commerce activity. What Congress wanted to do was to encourage states to have better sex offender registration systems for individuals within states. That is a general law enforcement prerogative, something that's quintessentially the power of the states and something that Congress only has the power to do through its spending provisions. If I could save the rest of my time for rebuttal, I'd sure like to. Thank you. Good morning. Good morning. It's been a long time since we saw you, I guess. Indeed, Your Honor, somewhat of a deja vu. May it please the Court, Alexander X from Assistant United States Attorney on behalf of the appellee United States of America. Your Honors, if I may, I'd simply like to start by pointing out some of the significant dates. The defendant's conviction in 2003 predates SORNA, which is enacted in July of 2006. The defendant at that point, at the time of enactment, shortly thereafter, had last registered in Lewiston, Idaho. Near the end of the year in 2006, in December, the warrant issues for the supervised release violations, one of those allegations being a failure to register. He is contacted and arrested in the state of Washington after having been in Lewiston, Idaho on September 27th of 2007. By other witness testimony, he had resided in a residence in Wapato in the Eastern District of Washington for, by that witness testimony, three to four months prior. That was in June or potentially May of the same year. Also through witness testimony, he had been in the Yakima area for approximately six months, putting us back into March of 2007. Those time periods, those changes of residence, which trigger an obligation to notify under SORNA, under 16913, occurred after not only the enactment of SORNA, but also after the AG's advisory regulation on the 28th of February of 2007. So looking at perhaps the last argument first, for ex post facto, because this is a continuing offense, unlike the Toosie case where when you fail, excuse me, to register for the draft, you have a completed offense, you now have a continuing offense here. And the obligation under SORNA accrued and was not fulfilled after both the initial enactment and the clarifying. Well, by your calendar, it probably doesn't have to be a continuing offense. He's got a new duty whenever he moves. That is correct. He does have a new duty whenever he moves. So even if it's not a continuing offense, it occurred by your calculation after the Attorney General's ruling? Somewhat in the spirit of belt and suspenders. If we're looking at the interstate commerce and we can't track down the precise time of travel in interstate commerce, we need this to avoid an ex post facto argument and have it be a continuing offense with the last offense necessary for the commission of the crime to occur. But your continuing offense theory doesn't help the interstate commerce travel? No. That simply addresses ex post facto. Now, because we would, and perhaps I'm not explaining it clearly, but if the government couldn't locate the time in which he went from Idaho to Washington with precision, we would need it to be a continuing offense to bring the last chain that forms the crime past the AG's deadline. We're the court to accept the argument in the circuits about the gap period between the enactment of SORNA and the AG's clarifying guideline. The government's not proposing that the court does this. The court believes that the jurisdictions which have said that subsection D merely clarifies the clear initial obligation in 16913A, we believe that that was appropriately decided. By the same token, we believe that Howell was correctly decided, indicating that not only is 18 U.S.C. 2550A appropriately under the Commerce Clause, but that 16913 effectuates that purpose under necessary and proper. Necessary and proper to what power? To the Commerce Clause power. And that, as Howell pointed out... How does it, if it affects, if it imposes a duty to register on someone who 20 years ago committed a federal offense, but has never traveled out of the state in which he committed it, how does that affect commerce? That doesn't. That falls under the basically exclusively federal domain, and it is distinguishable from the defendant's citation to Comstock, which dealt with the civil issue, and Comstock made clear that the problem with civil commitment was that there wasn't a subsequent act that caused the, in that case, involuntary incarceration of the individual. And so I hasten to point out that Comstock is very, is distinguishable on its facts, and the cases have essentially said that, excuse me if I can, in particular, Yellow Eagle, albeit a district court case, have essentially supported the government's position that it's a quintessential power that once you have that federal conviction, and once you commit the further act, that... Well, you're creating the further act. I mean, you have a federal conviction, and you've got a sentence, and you've got some supervised release on top of it, and let's say that's all done. Can Congress start adding burdens 20 years later because of that federal conviction? Does it have the constitutional power to do that? It does, because the failure to register is a later affect of your status as a sex offender, and your sex offense was accrued by way of a federal conviction, and we'd submit that, well, there isn't case law either way, Yellow Eagle, and the other cases that have addressed this, have simply said there's no problem. The Commerce Clause is not implicated. The federal government may do this. It's different from the idea of outlawing murder by an individual who has a predicate federal conviction, because they simply have nothing to do with each other. Here, it's an affect of the prior conviction. I guess if it's part of the exercise of the federal penal power, it might get you out of the Lopez problem and into a... some sort of an ex post facto problem or double punishment or whatever. And, Your Honor, in this case, I believe that it is the subsequent act that gets us out of ex post facto or double jeopardy. It's not that you're being punished for the fact of your prior conviction alone. It's the fact that you have failed to register as a later act. So is the registration duty a punishment? No, it is not. The registration duty itself is not a punishment. It has no penalty provision in 16913. It does have a penalty provision in 2258. Yes. Would Mr. George have a stronger or a different argument if the indictment had charged him with violating SORNA before the AG had clarified that it applied to individuals convicted before its passage? The answer to that question would depend upon which of the jurisdictional splits this Court adopted. As I indicated earlier, we believe that the jurisdictions that have decided that 16913 sub D is a clarifying rule and doesn't affect the initial duty under 16913A. I don't think that those are correctly decided. The Attorney General had the ability to say that certain individuals wouldn't be covered. But the default position in 16913A is everybody is. I hope I've answered the Court's questions. I don't have anything further unless the Court has further questions of me. What does the, how is it phrased, the delegation to the Attorney General? What does that sentence say? It says that the Attorney General shall have the power to determine the applicability of SORNA to different classes, those including those with pre-SORNA convictions, and additionally those individuals who are, due to certain circumstances, unable to comply with the initial SORNA requirements. What's contemplated there, I believe I'm stating this correctly. It does, however, it's the government's position that the reading of 16913A, indicating that everybody has to apply without a reference to that, is reasonably read to create an initial duty to register, which the Attorney General can opt out of. And as I indicated, there is a jurisdictional split. We believe that the jurisdictions that have decided, as I've indicated, decided the case correctly. I guess that was the argument between the majority and the dissent in the most recent Fourth Circuit case. It was. And there was a vigorous dissent. However, the Fourth Circuit did go the other way on that. As I've indicated, I believe that even were the Court, for the sake of argument, to adopt that position, as I indicated, we have qualifying conduct that comes after the Attorney General's regulation. All right. Thank you for your argument. Going to the prior federal conviction issue, the government hasn't identified a limiting principle. And Lopez, the Supreme Court, made very clear that when Congress acts, there needs to be limiting principles, regardless of how broad their powers may be. What is the limiting principle? The government says that there's people that are sex offenders that have it there under the federal government's exclusive federal domain. What's the limiting principle? Or is it just that the future crime of failure to register is covered? Is a future sexual assault covered? Is a future domestic violence offense covered? What offenses committed by prior federal sex offenders are covered or not? To go further, what about federal felons? If a person has a prior federal felony, is their jurisdiction extending beyond their conviction based on that? The federal government's jurisdiction in criminal cases varies from context to context. Sometimes they may occur in a federal enclave. That's the federal jurisdiction. The Necessary and Proper Clause allows the government to punish someone for a crime committed in that jurisdiction. But the federal government doesn't have jurisdiction over individuals. The federal government, at one point in time or another, there simply isn't a way to limit federal jurisdiction if we say, well, because the person has a prior sex offense, then we can prohibit certain acts by them in the future, apart from that sentence. And it does raise problems under double jeopardy and ex post facto as well, in that you're looking just to this prior conviction to then enhance, go beyond the statutory maximums and going beyond this available penalty at the time of the offense to punish someone at a later time. A judge can be asked if the duty to register is a punishment. And I will point out that if this Court were to reason, as the Eighth Circuit did, that the duty to register under 16913 really only exists for people who travel in interstate commerce under 2250, who fall under 2250, then the duty to register is intended to only have criminal purposes. Smith v. Doe will no longer apply. And so this Court has to look at the intent of the registration requirement, which is perspective, which is not with punishment in mind. But if the duty to register only applies to people who are going to be charged criminally, then it will be, have penal purposes and raise additional constitutional problems under the ex post facto clause. Under the doctrine of constitutional avoidance, this Court needs to look at the entirety of SORNA and try to find a way to reduce the penalty, and try to read it in a way that is constitutional, such that it's not facially unconstitutional, but constitutional as applied, or only applicable in certain circumstances. The preference would be that it's constitutional in its entirety. That can be done in a very simple way, in the way that the Sentencing Commission interpreted SORNA, which is that it is a set spending provision, that the obligations arise once states have adopted SORNA, and that will further the policy and the goal of Congress to get SORNA, something that they haven't done yet, and perhaps if we don't prosecute people and take that burden off the states at this point in time, states will be more likely to enact SORNA and further the goal of Congress by complying with its provisions. Thank you. You know how many states have implemented SORNA? Zero. The deadline's three, four weeks. Yes, and in fact, there was a hearing recently where one of the proponents of SORNA, the citizen, Jacob Wetterling's father, I think it is, the TV show host, went to Congress and pleaded with them to create additional incentives, because states simply don't want to enact SORNA. And of course, there's less incentive to do so if the traditional role of states, which is to incarcerate and prosecute people and fulfill their registers, is now being taken over by the federal government, in many instances at least. That just makes not implementing SORNA all the more attractive to the states. It would be more attractive if the federal government said, look, we're not going to investigate these cases or incarcerate people until and unless you implement SORNA. That will further the goals of Congress of making sure that every state and every jurisdiction has a SORNA-compliant scheme. Thank you both for your argument.
judges: Canby, Thompson, Callahan